UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PATRICIA SEIDENSTRICKER, et al.,<br>Petitioners,<br>v.<br>CITY OF SEATAC, et al.,<br>Respondents. | CASE NO. C13-1575RAJ<br>ORDER |

## I. INTRODUCTION

This matter comes before the court on a host of motions from parties to this proceeding, one of which is the motion of Petitioners Patricia Seidenstricker and Brian White to remand this action to King County Superior Court. The court GRANTS that motion (Dkt. # 3) and directs the clerk to REMAND this action to King County Superior Court without delay. Although the clerk shall notify the clerk of the state court of this order as it would in any other instance of remand, the court orders that Petitioners are also responsible for providing the state court with notice of this order. This order is effective immediately.

The court's decision to remand makes it unnecessary to reach any of Petitioners' other motions, and the clerk shall TERMINATE each of them. Dkt. ## 8, 11. The court also does not reach a motion to intervene that several entities filed collectively. The court directs the clerk to TERMINATE that motion (Dkt. # 12), without prejudice to renewing it in accordance with applicable rules of the state court. The court notes that it has

considered the brief that the putative intervenors submitted in opposition to Petitioners' motion to remand.

## II. BACKGROUND

Petitioners are registered voters in the City of SeaTac. Both of them signed a petition in support of an initiative proposing an ordinance that would increase the minimum wage and mandate other benefits for hospitality and transportation industry workers in the City. The court, like the Petitioners, refers to the proposed ordinance as "Prop One."

The proponents of Prop One submitted the petition, along with about 2,500 signatures, to the City Clerk in early June of this year. The City Clerk in turn transmitted the petition and signatures to the King County Elections Department for a determination of the sufficiency of the signatures. On June 20, the County issued a certificate of sufficiency, finding that a sufficient number of valid signatures supported the petition. Upon receiving the County's certificate of sufficiency, the City Clerk entered the City's own certificate of sufficiency on June 28.

Opponents of Prop One challenged the City's certificate of sufficiency, which led the City to convene a petition review board. The review board ruled against the opponents, concluding that despite various challenges to the validity of signatures supporting the petition, the proponents had nonetheless gathered enough valid signatures. On July 23, the City Clerk issued another certificate of sufficiency.

The opponents appealed in early July, invoking a City law permitting it to appeal certain City determinations in King County Superior Court. On August 26, The Honorable Andrea Darvas ruled in favor of the opponents, concluding that not enough valid signatures supported Prop One.

Two days later, the Petitioners filed this action in King County Superior Court, invoking RCW 29A.68.011. That statute, which governs election contests in Washington, permits an "elector" to petition a state court judge to prevent various

electoral wrongs. RCW 29A.68.011; *see also* RCW 29A.04.061 (defining "elector" as any person qualified to vote in Washington). Among other things, an elector can request a writ to correct an "error . . . in printing the ballots" or to prevent a "wrongful act" that "is about to be performed by any election officer." RCW 28A.68.011(2) & (4). In this case, Petitioners contend that King County election officials are about to commit error by printing ballots for the upcoming November general election that do not include Prop One. *See, e.g.*, *Parker v. Wyman*, 289 P.3d 628, 630 (Wash. 2012) (considering RCW 28A.68.011 challenge to placing on county ballot a judicial candidate who did not reside in the county). No one disputes that King County must submit ballots to its third-party printer no later than the close of business on Friday, September 6. The Petitioners named the City, the County, and the SeaTac Committee for Good Jobs (the proponents of Prop One) as Respondents.

The "error" to which Petitioners point is an error of state law. In Petitioners' view, the County's June 20 certificate of sufficiency was the final word as to whether Prop One would appear on ballots. The City's decision to make its own determination of sufficiency was, according to Petitioners, beyond the City's power, according to Washington statutes that allocate power between cities, counties, and the state. For that reason, Petitioners contend that Judge Darvas's decision on the appeal of the City's determination has no bearing on whether King County should place Prop One on the ballot. The County's deference to Judge Darvas's decision is thus an error which will result in the issuance of ballots that do not include Prop One.

Petitioners also, however, invoke both the Washington Constitution and the United States Constitution. In their view, the City's actions (and Judge Darvas's decision) violate the guarantees of due process, equal protection, and freedom of petition that are part of both constitutions. The court considers the constitutional questions in more detail in its later analysis.

On September 4, a week after Petitioners sued, the City seized on the federal constitutional claims and removed the case to this court, invoking the court's jurisdiction to hear cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

A flurry of activity followed. Petitioners filed three motions. The first demanded that the court remand the case to King County Superior Court, the second demanded as an alternative that the court issue a temporary restraining order requiring King County to place Prop One on the ballot, and the third demanded as a second alternative that the court resolve this matter on its merits no later than the end of Friday. Joining the fray were Filo Foods, LLC, Alaska Airlines, Inc., and the Washington Restaurant Association, Prop One opponents who collectively filed a motion to intervene. They and the City filed oppositions to each of Petitioners' motions. The County takes no position as to the merits of any party's claims, it merely requests a decision by the close of business on Friday. The SeaTac Committee for Good Jobs supports Petitioners' motions.

This court is not the only one considering this dispute. The SeaTac Committee for Good Jobs has both filed a motion for reconsideration before Judge Darvas and filed a motion for discretionary review in the Washington Court of Appeals. The Washington Court of Appeals will consider the latter motion at 1:15 p.m. on Friday. Petitioners also inform the court that the King County Superior Court is holding open a Friday morning hearing slot in the event that the court remands this case before then.

Because the parties have given the court little to no time to consider their positions,[1] the court has not heard oral argument. For the reasons stated below, it concludes that it lacks subject matter jurisdiction, and that even if it did, it should abstain from exercising that jurisdiction.

[1] Petitioners accuse their opponents of dragging their feet in order to ensure that no court makes a decision before the close of business Friday. They note that the City waited a week, until September 4, to file its notice of removal. The court notes that the putative intervenors remained silent until the same day. The court has no time to inquire further into whether the City or the intervenors removed this case to "run out the clock."

## III. ANALYSIS

### A. The Court Lacks Subject Matter Jurisdiction.

A defendant in a state court civil case may remove the action to a federal district court so long as the federal court has subject matter jurisdiction. 28 U.S.C. § 1441(a). The sole potential basis for subject matter jurisdiction here is the court's jurisdiction over federal questions, *i.e.*, "claim[s] arising under the Constitution, laws, or treaties of the United States (within the meaning of [28 U.S.C. § 1331])." 28 U.S.C. § 1441(c)(A). In most cases, assessing "arising under" jurisdiction is a straightforward exercise, involving determining whether the plaintiff has "plead[ed] a cause of action created by federal law (*e.g.*, claims under 42 U.S.C. § 1983)." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). By this standard, there is no basis for federal jurisdiction here, because the sole cause of action Petitioners pleaded arises under Washington law, specifically RCW 29A.68.011.

As the *Grable & Sons* Court explained, however, there is "another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction . . . over state-law claims that implicate significant federal issues." 545 U.S. at 312 ("The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues . . . ."). In *Grable & Sons*, for example, the Court held that a district court properly exercised jurisdiction over a state-law quiet title action where the plaintiff claimed title because the Internal Revenue Service had not given notice of its claim to the property in accordance with a federal statute. *Id.* at 314-15. The IRS was not a party to the case, however, having transferred whatever interest it had in the property to a private party. *Id.* at 317 n.4.

In contrast to the unavoidable federal question at issue in *Grable & Sons*, the federal questions in this action are at best a third alternative argument, one that nobody

hopes the court will reach. The primary dispute here is one of Washington law. Petitioners contend that King County alone, not the City, is empowered to determine the sufficiency of signatures on an initiative petition. The court need not recount Petitioners' argument (which sweeps in at least two chapters of the Revised Code of Washington and the SeaTac Municipal Code); it suffices to note that it is purely a state-law argument. If the court were to rule against that argument, it would next turn to Petitioners' claim invoking the Washington Constitution. In that claim, Petitioners argue that Judge Darvas trammeled voters' rights to participate in the initiative process by declining to count, even once, the signatures of voters who signed the Prop One petition twice. Petitioners also argue that the Washington right to participate in the initiative process is a fundamental right whose abridgement in this case violates both the Equal Protection Clause and the Due Process Clause of the Federal Constitution. No one explains why it would be necessary for the court to reach the federal constitutional argument in light of the state constitutional argument. Petitioners also contend that SeaTac treats initiative petitioners differently than other Washington cities, allegedly violating the Equal Protection Clause. Again, it is unclear why a court would ever reach this question, as its predicate is a finding that Washingtonians have a right under the state constitution to participate in the initiative process. To summarize, Petitioners' federal constitutional arguments are subsumed in a state-law cause of action, they appear to be superfluous in light of their arguments invoking the Washington Constitution, and the court would reach them only if it disagreed with Petitioners' interpretation of the statutory allocation of power between cities and counties in Washington.

The court doubts that a federal question, entirely subsumed in a state law cause of action, that a court need not necessarily resolve, is a question that invokes the court's "arising under" jurisdiction. The *Grable & Sons* Court demanded an "actually disputed and substantial" federal issue. 545 U.S. at 314. The mere presence of a "federal element" is not enough to create federal question jurisdiction. *Empire HealthChoice*

*Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006) (considering the "slim category [that] *Grable* exemplifies"). The court queries whether a federal issue lurking (if at all) only if the court exhausts several state-law grounds is part of the "special and small category" of cases (*McVeigh*, 547 U.S. at 699) that trigger "arising under" jurisdiction even though they arise in a state-law cause of action. *See*, *e.g.*, *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 675 (9th Cir. 2012) (finding no jurisdiction where federal issues were not "pivotal" in state-law claim).

The court need not decide, however, whether Petitioners have raised "substantial questions of federal law" within the meaning of *Grable & Sons*. Even if they have, the *Grable & Sons* Court recognized that a court must also consider whether it can resolve a federal question subsumed in a state law cause of action "without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.*; *see also Cal. Shock Trauma Air Rescue v. State Comp. Ins. Fund*, 636 F.3d 538, 542 (9th Cir. 2011) ("*Grable* stands for the proposition that a state-law claim will present a justiciable federal question only if it satisfies *both* the well pleaded complaint rule *and* passes the 'implicate[s] significant federal issues' test.") (emphasis and alterations in original). That inquiry requires "sensitive judgments about congressional intent, judicial power, and the federal system." *Bank of Am.*, 672 F.3d at 675-76 (citation omitted). Here, there can be little question that both Congress and the Washington Legislature would strongly prefer that Washington's courts adjudicate questions of Washington electoral law that arise under Washington statutes. The presence of a federal constitutional question that would arise (if at all) only after the disposition of the state law questions, does little to change that balance. As the *Grable & Sons* Court explained, "the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction." 545 U.S. at 314. The statute that Petitioners invoke, RCW 29A.68.011, demands that a state judge make a decision "not later than five days" after they file suit.

Removal to federal court, with its inherent delay, is contrary to the system of speedy litigation that the Washington legislature envisioned. To permit a federal court to interfere in that system merely because a federal question might arise after answering purely state law questions is unnecessarily disruptive. For all of these reasons, the court concludes that it lacks subject matter jurisdiction.

**B. Even if the Court Had Subject Matter Jurisdiction, It Would Abstain From Exercising It.**

If the court had subject matter jurisdiction, it could not overlook its obligation to consider abstaining from exercising jurisdiction over this state-law dispute. The doctrine known as *Pullman* abstention permits a court to postpone the adjudication of federal constitutional questions that could be avoided by a ruling on an uncertain issue of state law. *C-Y Dev. Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir. 1983). A court considers three factors in deciding whether to invoke *Pullman* abstention: 1) whether the case "touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open," 2) whether a "constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy," and 3) whether the potentially dispositive state issue necessitates an interpretation of uncertain state law. *Canton v. Spokane Sch. Dist. No. 81*, 498 F.2d 840, 845 (9th Cir. 1974), *overruled on other grounds as recognized by Heath v. Cleary*, 708 F.2d 1376, 1378-79 n.2 (9th Cir. 1985).

For the reasons the court has already articulated, *Pullman* abstention is appropriate here. A ruling on Petitioners' state law arguments is likely to moot any federal constitutional question. Petitioners' state law arguments raise unsettled question of state law. How does Washington allocate responsibility for verifying city initiative petitions? Does the Washington right to participate in the initiative process apply to city initiatives just as it does to state initiatives? Additionally, as the court previously explained, the

expedient system to resolve election challenges that the Washington legislature has created is a sensitive area into which federal courts should not lightly intrude.

Because the court would abstain from resolving Petitioners' federal constitutional questions, a remand to state court is the proper remedy. Typically, a court engaging in *Pullman* abstention simply stays consideration of the federal constitutional question while a state court resolves the potentially determinative state-law issue. *VH Prop. Corp. v. City of Rancho Palos Verdes*, 622 F. Supp. 2d 958, 967 (C.D. Cal. 2009). That question is more complicated in a case that has been removed to federal court, because there is no pending state court action. *Id.* ("Few courts have had the opportunity to consider what a district court should do when it decide[s] to abstain under *Pullman* in a case removed by [a] defendant from state court."). Courts have disagreed on whether remand of an entire action, or merely the state law claims, is the appropriate course. *Id.* at 968-69. In this case, the issue is either moot or academic. The court has concluded it lacks subject matter jurisdiction, and in any event Petitioners' claims will be resolved in state court in the next two days. For that reason, the court will remand this action in its entirety.[2]

## IV. CONCLUSION

For the reasons stated above, the court GRANTS Petitioners' motion to remand (Dkt. # 3) and directs the clerk to REMAND this action to King County Superior Court without delay. Although the clerk shall notify the clerk of the state court of this order as it would in any other instance of remand, the court orders that Petitioners are also responsible for providing the state court with notice of this order. This order is effective immediately.

Before remanding, the clerk shall TERMINATE Plaintiff's remaining motions. Dkt. ## 8, 11. The clerk shall also TERMINATE the motion to intervene (Dkt. # 12), without prejudice to the putative intervenors renewing it in accordance with applicable

[2] The court notes that the parties may preserve any federal claims in state court pursuant to *England v. La. Bd. of Med. Examiners*, 375 U.S. 411, 415-16 (1964).

rules of the state court.

Dated this 5th day of September 2013.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE